

# THE ATTORNEY GENERAL
## OF TEXAS

Gerald C. Mann

**ATTORNEY GENERAL**

AUSTIN 11, TEXAS

May 19, 1939

Honorable A. W. Lowery
County Attorney
Nacogdoches, Texas

Dear Sir:

Opinion No. O-826
Re: How is the salary of the county
auditor, appointed under Article 1646,
R. C. S., fixed or determined?

Your request for an opinion on the above stated question, together with other questions incidental thereto, has been received by this office.

It appears that Nacogdoches County does not have either the prescribed population or assessed tax valuations required by Article 1645, R. C.S. to authorize the appointment of a county auditor under that Article, but a county auditor has been appointed for the county under the provisions of Articles 1646 and 1647. The district judge who appointed the auditor fixed his salary at a minimum of one hundred twenty-five ($125.00) dollars per month, fully complied with all the provisions of Art. 1647, and the district clerk performed his duty as prescribed by said Article. However, the Commissioners' Court refused to record in its minues the certified copy of the minutes received from the district clerk, and refused to enter an order directing the payment of the auditor's salary, as commanded to do by the same Article, but to the contrary entered an order instructing the county clerk to issue no warrant to the auditor in payment of his monthly salary. In view of this situation, you want to know whether the auditor's salary is fixed by the district judge or by the Commissioners' Court. Other questions submitted will be subsequently considered and answered herein.

The question stated has been heretofore considered by this department upon at least four occasions. On July 24, 1931, Hon. Geo. C. Stephens, member of the House of Representatives, was adivsed that the salary of such a county auditor was determined by the provisions of Art. 1645. On August 17, 1936, Mr. R.C. Tompkins, County Auditor of Nacogdoches County, was advised that the Commissioners' Court of said county was the proper authority to fix his salary, and that the amount was for the Court's determination. Then, on December 21, 1936, Hon. Roy R. Priest, District Attorney, Rankin, was advised to the same effect. The last expression by the department on the subject which we have been able to find is contained in a letter dated December 22, 1938, addressed to Hon. Lex. B.Smith, District Judge, Groesbeck, wherein he is advised that the salary of the County Auditor of Freestone County should be fixed by the Commissioners' Court of said county. The basis for that conclusion was that the "Commissioners' Court is an agent

of the county and controls the levies affecting revenues of a county."
The opinions rendered to Mr. Tompkins and Mr. Priest state no reasons
for the conclusions therein reached. All of the above mentioned opinions
were written by Assistant Attorneys General, were not conference opinions,
and were not approved by an Attorney General. The first opinion was writ-
ten during the administration of Hon. Jas. V. Allred, the others during the
time that Hon. Wm. McCraw was Attorney General. One of thse opinions holds
that the salary of the County Auditor of your county must be fixed by the
Commissioners' Court of said county at such an amount as it might determine,
while the opinion first above referred to specifically holds that the sal-
ary of an auditor appointed under the authority of Article 1646 must be
governed and determined by the measuring method set up in Article 1645. Both
opinions cannot be correct.

Let us examine these statutes along with Art. 1647 and see if we
cannot arrive at a correct answer to the question involved.

The pertinent parts of Articles 1645 and 1646 read, respectively, as
follows:

"In any county having a population of thirty-five thousand inhabitants, or
over, according to the preceding Federal census, or having a tax valuation
of fifteen million dollars or over, according to the last approved tax rolls,
there shall be biennially appointed an auditor of accounts and finances,
the title of said officer to be county auditor, who shall hold his office
for two years, and who shall receive as compensation for his services one
hundred and twenty-five dollars for each million dollars, or major portion
thereof, of the assessed valuation, the annual salary to be computed from
the last approved tax rolls, said annual salary from county funds shall not
exceed thirty-six hundred dollars, to be paid monthly out of the general
funds of the county upon an order of the commissioners' court. . . ."

"When the commissioners' court of a county, not mentioned and enumerated in
the preceding article shall determine that an auditor is a public necessity
in the dispatch of the county business and shall enter an order upon the
minutes of said court fully setting out the reasons and necessity of an
auditor, and shall cause said order to be certified to the district judges
having jurisdiction in the county, said judges shall, if such reason be
considered good and sufficient, appoint a county auditor, as provided in
the succeeding article, who shall qualify and perform all the duties
required of county auditors by the laws of this State; provided said judge
shall have the power to discontinue the office of such county auditor at
any time after the expiration of one year when it is clearly shown that such
auditor is not a public necessity and his services are not commensurate with
his salary received. . . ."

Article 1647 reads as follows:

"The district judges having jurisdiction in the county shall appoint the
county auditor at a special meeting held for that purpose, a majority ruling;

provided, that if a majority of such judges shall fail to agree upon the selection of some person as auditor, then either of said judges shall certify such fact to the Governor, who shall thereupon appoint some other district judge to act and vote with the aforesaid judges in the selection of such auditor. The action shall then be recorded in the minutes of the district court of the county and the clerk thereof shall certify the same to the commissioners court, which shall cause the same to be recorded in its minutes together with an order directing the payment of the auditor's salary. . . ."

The office of the county auditor was created in 1905 by Chap. 161, Reg. Ses. 29th Legislature. Sec. 1 of that Act, as amended in 1907, was carried into the Revised Statutes of 1911 as Art. 1460, which Article was amended in 1915. The original Act and all amendments up to and including ghe amendment of 1915 were based on either the population of the county or some city located therein. The salary of the auditor in the original Act, and all amendments thereto, was fixed at $2400.00, no more, no less. In 1917, Chap. 184, Reg. Ses., the 35th Legislature for the first time provided for the appointment of a county auditor based on population or tax valuations. The valuation was fixed at fifteen million dollars, or over, the same as now provided for in Art. 1645. In the same Act, Art. 1460a, now Art. 1646, was created and Art. 1460, after being amended in 1923 to increase the maximum salary, is now, excluding later "bracket" amendments, Art. 1645. It may here be noted that the Act of 1917 limited the salary of a county auditor to $100.00 for each million, or major portion thereof, of tax valuation, not to exceed $2400.00 per annum.

Art. 1460a (Art. 1646) did not create the office of county auditor but only provided that those counties who were not eligible to have a county auditor because of lack of the necessary population, or the required taxable valuation, might have the benefit of the services of a county auditor if and when the Commissioners' Court determined a public necessity existed for same, and provided the procedure for the appointment of an auditor by the same appointing agency (old Art. 1461, now Art. 1467) empowered to appoint an auditor under Art. 1460.

Art. 1460a was nothing more nor less than an exception to the general qualifications prescribed for counties to be eligible to have a county auditor by Art. 1460. This exception could have with propriety been added to said Article as a proviso, for in truth and in fact, that is what it is, and nothing more. Sec. 1 of the Act of 1917 amends Art. 1460; Sec. 2 adds Art. 1460a, and Sec. 3 amends Art. 1461 by providing the additional procedure, perhaps made necessary by Art. 1460a.

If Sec. 2 adding Art. 1460a, had been written as a proviso to Sec. 1 of the Act of 1917, amending Art. 1460, the question now under consideration would never have arisen because it would have been apparent that the salary of a county auditor appointed in a county embraced within the proviso would be measured by the same yardstick that salaries of county auditors

who come within the general provisions of Art. 1460, of which it would have been a part, were measured, which was "one hundred dollars for each million dollars, or major portion thereof, of the assessed valuation." It is apparent that measured by this yardstick, no county auditor's salary would ever amount to the maximum salary of $2400.00, to which those auditors of counties having more than $15,000,000.00 taxable valuation were limited.

It is the writer's opinion that the statutes are so plain and unambiguous that there is no occasion to resort to rules of construction, but if such resort must be had, then we must remember that a statute must be construed to make it effective, that is, enforceable and operative, if it is fairly susceptible of such interpretation; each part must be considered in connection with every other part, in order to produce a harmonious whole and to reach the true legislative intent, the real purpose of construction. A statute must be given a construction that avoids mischievous consequences, or make it impossible of enforcement, or to defeat or nullify, or that will rendere it fruitless, futile, purposeless or useless. It must be presumed that the Legislature did not intend to do a foolish or useless thing.

What will be the consequences should we attempt to construe the statute as authorizing Commissioners' Courts to fix the salary of county auditors appointed under Art. 1646? In the first place, we are confronted with the established policy of the State fixed by repeated legislative acts fixing the salaries of county auditors generally. The Legislature evidently thought it would be unwise to permit a Commissioners' Court to fix the salary of an officer whose duty it was to check their official acts and to keep them in due bounds. The duties imposed by statute upon county auditors patently affects a commissioners' court in many ways, in the exercise of its authority over county affairs. The Legislature was fully aware of the evil to be remedied when it created the office of county auditor. That body knew that a county auditor should not be influenced by such courts or the members thereof, when it provided for his appointment by district judges, and made his salary certain, or fixed a yardstick whereby it could be made certain without the intervention of the court. The Legislature did not want to put a county auditor in a position where he could be intimidated or influenced by the court, by permitting the court to raise or lower his salary at will, or discharge him.

We are next confronted with this fundamental proposition of law, to-wit:

"In the absence of express Constitutional provision, the compensation of officers must be fixed by the Legislature or by some governing body which has been expressly authorized to do so." Wharton Co. v. Ahldag, 84 Tex. 12, 19 S.W. 291; State v. Moore, 57 Tex. 307; First Baptist Church v. City of Fort Worth (Com. App.) 26 S.W. (2d) 198; 34 Tex. Jur. 506, 507.

The office of the county auditor is a creature of the Legislature, hence there is no constitutional provision fixing the salaries of such officers. Therefore, we must look to the statute to see how such salaries are fixed, and if not fixed by statute, we must then look for a statute expressly authorizing some governing body to do so. If there be no such statute, it necessarily follows that no salary can be paid to such county officers. See authorities cited above. In that event, w e would convict the Legislature of having done a futile, useless, ineffective, unenforceable and fruitless thing -- enacted an impotent statute.

We have been unable to find any statute empowering a commissioners' court, a district judge, or any governing body to fix the salary of a county auditor, whether he be appointed under Art. 1645 or Art. 1646. There are no such statutes for the very simple reason that there is no necessity for same. The Legislature has fixed the salary of county auditors by the plain provisions of Art. 1645. In that Article is found a yardstick by which every county auditor's salary may be definitely determined, except those whose salaries are fixed by numerous bracket amendments thereto, and by other bracket statutes with which we are not here concerned, because they do not apply to Nacogdoches County.

In this connection, we call your attention to the fact that in each and every bracket amendment added to Article 1645, and in Articles 1645a to Article 1645g, inclusive, Vernon's Annotated Statutes, a salary is specifically fixed for the county auditor of the county or counties to which said bracket amendments apply.

You have advised us that the assessed valuation of Nacogdoches County, as shown by the last approved assessment rolls of said county, is approximately twelve million dollars. It is a simple matter of compuation to determine that the county auditor's salary is fifteen hundred dollars per annum.

The other questions submitted are dependent upon the answer to your main question, which we have just answered. The Commissioners' Court should comply with the plain mandatory provisions of Art. 1647, record in its minutes the certified copy of the minutes of the district court appointing the auditor, and enter an order directing the payment of the auditor's salary each month as it accrues.

The law presumes all public officers will perform their official duties. Therefore, we must presume that the Commissioners' Court of your county will perform its duty in this instance. In fact, that body has no discretion or other alternative than to follow the plain mandatory provisions of Article 1647. For this reason, we do not advise whether the county clerk should proceed to issue to the county auditor his salary check each month as his salary accrues until the Commissioners' Court performs its perfunctory duty of recording in its minutes the certified copy of the minutes of the distr ct court and enter an order directing the

payment of the countu auditor's salary, because we feel that this will be done as soon as the court has been officially advised what its duty is in the premises.

The foregoing remarks are based upon the presumption that the person appointed to the office of county auditor has taken both the constitutional and the special oath of office required of him by Art. 1649, and has filed with the Commissioners' Court the bond provided for in said Article. In this connection, we are further advised that the auditory recently appointed succeeds himself in office. If he has not taken the oaths, executed and filed the bond, he may yet do so, for under Sec. 17, Art. 16 of our Constitution, he is required to perform the duties of his office until he qualifies. Furthermore, the provision found in Art. 1649, requiring the bond to be filed within twenty days after his appointment has been construed as directory in similar statutes. McFarlane et al v. Howell, County Judge, (Civ. App.) 43 S.W. 315, error refused. In either event, the auditor is entitled to his compensation so long as he serves the county in that capacity.

The opinions heretofore written by assistants and hereinabove referred to, wherein views contrary to this opinion are expressed, are hereby specifically overruled.

Trusting that the foregoing answers your inquiry, we are

Very truly yours

ATTORNEY GENERAL OF TEXAS

By /s/ Bruce W. Bryant

Bruce W. Bryant
Assistant

BWB-Mr:egw
APPROVED:
/s/ Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

Approved
Opinion Committee
by G R L
Chairman